IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KEVIN STRICKLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-cv-00313-DGK |
| ) | |
| KANSAS CITY, MISSOURI BOARD ) | |
| OF POLICE COMMISSIONERS, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS

This lawsuit is brought under 42 U.S.C. § 1983 by Plaintiff Kevin Strickland against the Kansas City, Missouri, Board of Police Commissioners (the "Board") through its individual members; and Kansas City Police Department officers Larry Gilmer, Gary Parker, David Barton, Donald Hanton, and William Schweitzer in their individual and official capacities (collectively, "Defendants") for the alleged unconstitutional conduct that resulted in his wrongful conviction. Now before the Court is Defendants' partial motion to dismiss seven of the ten counts brought by Plaintiff. ECF No. 14. In response, Plaintiff voluntarily dismissed six of those counts—Counts II, IV, VII, VIII, IX, and X—leaving only Count V at issue for purposes of the motion to dismiss. For the following reasons, Defendants' motion to dismiss Count V is DENIED.

**Standard**

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

**Background**

Plaintiff alleges the following facts, which the Court accepts as true for the purposes of this motion. On the evening of April 25, 1978, four assailants entered a Kansas City home, injuring Cynthia Douglas and killing three others. Compl. ¶ 3, ECF No. 1-2. Ms. Douglas saw three of the assailants' faces and, when questioned by the police that night, she correctly identified two of them—Vincent Bell and Kilm Adkins—but could not identify the third. Ms. Douglas personally knew Plaintiff and did not identify him as one of the assailants that night. Ms. Douglas reaffirmed this statement to officers the next morning. *Id.* ¶ 4.

Nonetheless, the morning after the murders, officers took Plaintiff into custody. *Id.* ¶ 63. Plaintiff alleges a series of improper constitutional violations occurred thereafter. First, Defendants Barton and Hanton interrogated Plaintiff in an aggressive manner, falsely accused him of being involved in the murders, and then jointly drafted a report containing false and fabricated inculpatory statements. *Id.* ¶¶ 64–69. Second, Defendant Schweitzer and other officers brought Ms. Douglas in for questioning again that afternoon at which time they pressured her into identifying Plaintiff as the third assailant. *Id.* ¶¶ 72–78. Then Commissioner of the Board, Gwendolyn Wells (now deceased), participated in this interview, had knowledge of the misconduct occurring, and acquiesced to such misconduct. *Id.* ¶¶ 72, 78–81. According to Plaintiff,

2

Commissioner Wells was one of several policymakers with final policymaking authority over the Board. *Id.* ¶ 79. Third, Defendant Schweitzer and another officer fabricated the interview report thereafter, stating Ms. Douglas independently identified Plaintiff as the third assailant. *Id.* ¶ 76. Fourth, Defendants Barton and Hanton pressured Ms. Douglas into identifying Plaintiff in an in-person line-up. *Id.* ¶¶ 82–83. Lastly, Defendants Gilmer and Parker fabricated evidence and reported to the prosecutor that Ms. Douglas had actually identified Plaintiff, by nickname, the night of the murders. *Id.* ¶ 87.

Plaintiff's first trial in 1978 ended in a hung jury. *Id.* ¶ 11. Plaintiff was re-tried in 1979 and wrongfully convicted by jury of capital murder and two counts of second-degree murder. *Id.* ¶ 12. In both trials, the above fabricated evidence was presented to the jury and the true circumstances of Ms. Douglas' identification were suppressed. *Id.* In November 2021, Plaintiff's conviction was set aside based on evidence of his innocence, and he was released from custody. *Id.* ¶¶ 15–16. On April 11, 2023, Plaintiff filed this ten-count lawsuit against Defendants.[1]

**Discussion**

"[T]o state a claim for municipal liability under § 1983, a plaintiff must plead facts demonstrating that the defendants violated a constitutional right either 'pursuant to official municipal policy' or as part of 'a custom or usage with the force of law.'" *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, "[w]hen a

---

[1] Plaintiff's Complaint alleged ten counts: Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Conducting a Reckless Investigation (Count I); Malicious Prosecution (Count II); Civil Rights Conspiracy (Count III); Failure to Intervene (Count IV); Municipal Liability (Count V); Malicious Prosecution under Missouri Law (VI); Intentional Infliction of Emotion Distress under Missouri Law (Count VII); Abuse of Process under Missouri Law (Count VIII); Civil Conspiracy under Missouri Law (Count IX); and Respondeat Superior under Missouri Law (Count X). As stated earlier, Plaintiff voluntarily dismissed Counts II, IV, VII, VIII, IX, and X. *See* Pl.'s Suggestions in Opp'n at 1 n.1, ECF No. 31. Counts I, III, V, and VI remain moving forward.

complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. School Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Accordingly, the complaint need not specifically identify an unconstitutional policy or custom, but it must, at a minimum, set forth facts sufficient to allow the Court to draw a reasonable inference that one exists and caused the injury. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *Porter v. Byrd*, 18-06099-CV-SJ-ODS, 2019 WL 1061682, at *3–4 (W.D. Mo. Mar. 6, 2019) (denying motion for judgment on the pleadings regarding *Monell* claim).

Here, the Complaint alleges Defendants had a "policy, practice, or custom of unconstitutional misconduct in criminal investigations, including a particular use of coercive techniques in witness interviews and line-up procedures to obtain false inculpatory statements and/or identifications from witnesses by coercion, suggestion, and the withholding of exculpatory evidence." Compl. ¶ 161. Defendants argue the Complaint fails to plead policy, custom, or ratification theories that subject the Board to liability. The Court addresses each theory in turn.

I. **The Board is not entitled to Eleventh Amendment immunity.**

As an initial matter, Defendants argue the Board is entitled to Eleventh Amendment sovereign immunity because the Board is an agency of the state. *See* Dfs.' Suggestions in Support at 13 n.2, ECF No. 15. This argument lacks merit. The Eighth Circuit has concluded the "Board does not constitute an arm of the state for purposes of Eleventh Amendment immunity." *Gorman v. Easley*, 257 F.3d 738, 745 (8th Cir. 2001), rev'd on other grounds, *Barnes v. Gorman*, 536 U.S. 181 (2002); *see Darby v. Bratch*, 287 F.3d 673, 678–79 (8th Cir. 2002).

4

## II. Plaintiff adequately pled a policy theory.

Turning to the substance of Plaintiff's *Monell* claim, the Court first addresses Plaintiff's policy theory. "[A] 'policy' points to a 'deliberate choice of a guiding principle or procedure' made by a municipal official with final authority over the matter at issue." *Hardy v. City of Kansas City*, 19-CV-00237-DGK, 2019 WL 7041512, at *2 (W.D. Mo. Dec. 20, 2019) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). "Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is 'taken by the highest officials responsible for setting policy in that area of the government's business.'" *Rynders v. William*s, 650 F.3d 1188, 1195 (8th Cir. 2011) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)); *see Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). "[W]hether an official had final policymaking authority is a question of state law." *Davison v. City of Minneapolis*, 490 F.3d 648, 661 (8th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority[.]")).

Plaintiff alleges Commissioner Wells was a final policymaker for the Board pursuant to Missouri Revised Statute § 84.420. Compl. ¶ 158. Thus, her participation in, knowledge of, and acquiesce to the unlawful tactics used in Ms. Douglas' interview demonstrates the Board had a policy of unconstitutional misconduct in criminal investigations. That policy, according to Plaintiff, led to his wrongful conviction. Taking these allegations as true, the Court finds Plaintiff has stated a plausible claim for a constitutional violation resulting from a policy.

While Defendants argue Commissioner Wells was not a final policymaker for the Board—because Missouri Revised Statute § 84.410 requires a *quorum* for the transaction of all Board business—Plaintiff presented information suggesting Commissioner Wells could have had final

5

policymaking authority. *See* Pl.'s Suggestions in Opp'n at 20. Thus, the Court declines to decide the issue on a motion to dismiss. *See Robinson v. City of Sikeston*, 19-CV-41-RLW, 2020 WL 588606, at *10 (E.D. Mo. Feb. 6, 2020) (declining to decide whether an individual was a final policymaker for the city at the motion to dismiss stage because the record had not been fully developed).

### III. Plaintiff adequately pled a custom theory.

To establish a *Monell* claim for "custom" liability, Plaintiff must plead facts sufficient to plausibly infer "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [municipality's] employees; (2) deliberate indifference to or tacit authorization of such conduct by the [municipality's] policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the [municipality's] custom, i.e., that the custom was a moving force behind the constitutional violation." *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up and quotation omitted). "Liability for an unconstitutional custom or usage . . . cannot arise from a single act." *McGautha v. Jackson Cnty. Collections Dep't*, 36 F.3d 53, 57 (8th Cir. 1994).

Plaintiff's Complaint alleges at least five separate instances of investigative misconduct committed by seven different officers within twenty-four hours of his arrest; alleges Defendants gave the prosecution fabricated evidence and suppressed evidence; and alleges these acts led to his wrongful conviction. Defendants argue these incidents do not establish a "continuing, widespread, persistent pattern of unconstitutional misconduct" because they occurred within a short period of time, and Plaintiff was the only victim. However, "multiple incidents involving a single plaintiff could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization

6

of, the conduct by policymaking officials." *Johnson*, 725 F.3d at 829 (affirming grant of summary judgment on plaintiff's *Monell* claim because plaintiff "present[ed] no evidence to suggest that the County's policymaking officials would have received notice of the denial of his medication in the early morning hours of January 28 and made a deliberate choice to ignore or tacitly authorize the denial, all in the course of those few hours"); *see McKay v. City of St. Louis*, 15-CV-01315-JAR, 2016 WL 4594142, at *6 (E.D. Mo. Sept. 2, 2016) (denying motion to dismiss plaintiff's *Monell* claim because plaintiff alleged multiple officers and prosecutors were involved in the unconstitutional investigative acts over the course of several months). In this case, because the Complaint alleges Commissioner Wells knew about, participated in, and acquiesced to the officers' misconduct in Ms. Douglas' interview, she had notice of the misconduct and acted with deliberate indifference or tacit authorization. Thus, Plaintiff has stated a plausible claim for a constitutional violation resulting from a custom.

**IV.     Plaintiff adequately pled a ratification theory.**

Finally, Defendants argue the Complaint does not allege the Board was aware of any unconstitutional misconduct or took affirmative action to approve such conduct. "A final policymaker ratifies the decision of a subordinate when he or she takes an affirmative act to approve both the decision and the basis for the decision. 'Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act.'" *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citations and quotations omitted). Ratification is a "question of fact for the jury to decide." *Id.*

As stated above, the Complaint alleges Commissioner Wells—having policymaking authority for the Board—was aware of officer misconduct in Ms. Douglas' interview and permitted

the resulting fabricated evidence to be used in Plaintiff's trial. While this is a close call, this is enough to adequately plead a ratification theory.[2]

## Conclusion

The Court finds Plaintiff alleged sufficient facts that, if accepted as true, state a plausible *Monell* claim. Accordingly, Defendants' motion to dismiss Count V is DENIED.

**IT IS SO ORDERED.**

Date: January 10, 2024         /s/ Greg Kays
                               GREG KAYS, JUDGE
                               UNITED STATES DISTRICT COURT

---

[2] The Court again notes this theory hinges on whether Commissioner Wells had final policymaking authority.